# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HERBERT FELDER, | : | CIVIL NO. 1:10-CV-2354 |
| Petitioner, | : | (Judge Caldwell) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| WARDEN H.L. HUFFORD, | : | |
| Respondent. | : | |

## REPORT AND RECOMMENDATION

### I. Introduction

In this habeas corpus petition, the Petitioner, Herbert Felder, invites us to examine the results a prison disciplinary hearing which led to the forfeiture of good time for this federal prisoner. Specifically, Felder contends that the hearing lacked appropriate procedural safeguards and reached a result which was unsupported by the evidence. Because we find that Felder was afforded a full panoply of procedural protections, and conclude that there is sufficient evidence to support the prison's finding of misconduct, it is recommended that this petition be denied.

### II. Statement of Facts and Case

#### A. DHO Proceedings

The pertinent facts can be simply stated: The Petitioner, Herbert Felder, is a federal prisoner who was sentenced in August of 2003, in the United States District

Court for the Western District of Pennsylvania to a 262-month term of imprisonment for conspiring to distribute more than one kilogram of heroin and more than five kilograms of cocaine. (Doc. 7-1, Ex. 1, Attach. A.)

Felder arrived at FCI Fort Dix on April 28, 2008, and was housed at that facility in November of 2009. (Id.; Attach. A.) While incarcerated at FCI Ft. Dix, on November 11, 2009, Felder received an incident report for a violating prison rules, specifically, for allegedly possessing contraband, namely, a cell phone.(Id.; Attach. B.) Felder received this incident report on November 19, 2009.

This incident report recited that on November 11, 2009, at approximately 8:30 p.m., the Senior Officer Specialist was conducting a routine shakedown, or inspection, of inmate property in Room 247 at FCI Ft. Dix. (Id., Attach. B.)While conducting this shakedown inspection of Felder's locker, the Senior Officer Specialist found a purple Motorola cellular telephone inside a pint size milk carton concealed in the locker. (Id.) Significantly, the officer also noted that Felder's locker had been "secured" prior to this search. (Id.)

Because the possession of a cell phone by an inmate is prohibited under prison rules, this discovery led to disciplinary proceedings against Felder. As part of these proceedings, on November 28, 2009, Felder appeared before the prison's Unit Disciplinary Committee for an initial hearing regarding this alleged infraction. (Id.; Attach. C.) This initial hearing had been delayed briefly while this incident was

2

referred to the FBI, a course of action compelled by prison rules which state that: "when it appears likely that the incident may be the subject of criminal prosecution, the investigating officer shall suspend the investigation, and staff may not question the inmate until the FBI or other investigative agency interviews have been completed or until the agency responsible for the criminal investigation advises that staff questioning may occur." 28 C.F.R. § 541.14(b)(1).

At this initial hearing Felder received notice of his procedural rights, receiving and signing the "Inmate Rights at Discipline Hearing" form. (Id.; Attach. D.) Felder was further placed on notice of his rights in connection with this disciplinary hearing when he received, and signed, a form entitled "Notice of Discipline Hearing Before the DHO." On that form, Felder acknowledged that he was aware of his right to the assistance of a staff representative in this matter, but indicated that he did not want a staff representative at the DHO hearing. (Id.) Instead, Felder simply stated that he wanted one witness, Unit Counselor Dixon, at the hearing. (Id.)

The Unit Disciplinary Committee, (UDC) then referred this charge to the institution's Disciplinary Hearing Officer (DHO) for further hearings. (Id.) On December 4, 2009, this DHO hearing was conducted at FCI Ft. Dix. (Id.; Attach. E.) Felder attended the hearing; waived the appearance of a staff representative and was also advised of his rights, which Felder indicated he understood. In the course of this

DHO hearing, Felder denied that he had possessed the cell phone found in his secured locker. (Id.) Felder declined, however, to request any witnesses. (Id.)

On December 21, 2009, following the conclusion of this hearing, the DHO issued a written decision in this matter. (Id.) This decision indicated that the DHO had considered all available evidence, including the incident report, the reporting officer's memorandum, and Felder's statement. (Id.) Noting that the officer's report stated that the cell phone was found concealed in a milk carton located inside of Felder's locker in Room 247, and further observing that the officer reported that Felder's locker was "secured" at the time that the search discovered the cell phone hidden inside that locker, the DHO found that, based upon the greater weight of the evidence, Felder committed the prohibited act of possession of a hazardous tool-cellular phone on November 11, 2009. (Id.) Notably absent from the DHO's report was any reference to, or reliance upon, confidential source information. Thus, the DHO decision, on its face, relied upon the discovery of a cell phone, hidden in a milk carton, concealed in Felder's secured locker, to conclude that Felder was guilty of this institutional rules infraction.

The DHO then sanctioned Felder to thirty (30) days in disciplinary segregation, thirty (30) additional days in disciplinary segregation which was suspended pending 180 days of clear conduct, a forty (40) day disallowance of good conduct time, a 378 day forfeiture of non-vested good conduct time, an eighteen (18) month loss of

4

telephone privileges, and a sixty (60) day loss of both visiting and commissary privileges. As noted on the DHO report, a copy of the report was provided to Felder on December 23, 2009. (Id.)

On January 29, 2010, Felder was transferred from FCI Fort Dix. He arrived at FCI Schuylkill on April 19, 2010. (Id.; Attach. A.)

### B. Felder's Contentions in This Habeas Petition

Felder filed the instant habeas corpus petition on November 15, 2010, (Doc. 1), challenging this prison incident report issued to him and sanctions subsequently imposed upon him by the DHO. (Id.) In this petition, Felder advances both general and specific claims of wrongdoing by prison staff. First, Felder alleges, in general terms, that his due process rights were violated during the disciplinary process because the DHO was biased against him, and because the DHO relied upon confidential sources without independently assessing the credibility of these course. (Id.) After asserting these general claims, Felder then leveled a more specific charge, contending that the evidence presented in the DHO hearing was insufficient to establish that he possessed the cell phone, since numerous other inmates also had access to Room 247, the room where Felder's locker was located, and the phone was found. (Id.) In this petition Felder requests his good conduct time and telephone, visiting, and commissary privileges all be reinstated. (Id.)

5

This matter has been fully briefed by the parties, (Docs. 2,7, and 9), and is now ripe for resolution. For the reasons set forth below, it is recommended that this petition be denied.

### III. Discussion

#### A. Substantive and Procedural Standards Governing Prison Disciplinary Hearings

In this habeas petition Felder launches a two-fold constitutional assault upon this prison disciplinary decision, challenging that disciplinary process generally on procedural due process grounds, and asserting that the decision is substantively flawed since there is insufficient evidence to support a finding of misconduct on his part. Felder faces an exacting burden of proof in advancing these two constitutional claims.

##### 1. Procedural Standards for DHO Hearings

First, with respect to his procedural due process concerns, it is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). The Supreme Court has, however, recognized a set of minimum procedural protections that must apply to prison disciplinary proceedings, including the right to: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety or correctional goals, to call witnesses and present documentary evidence as part of a defense; and (3)

6

a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. Id. at 563-67.

Due process also requires that a prison disciplinary tribunal be sufficiently impartial. Meyers v Alldredge, 492 F.2d 296, 305-07 (3d Cir. 1974). The requirement of an impartial tribunal "prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge from sitting on the disciplinary committee." Meyers, 492 F.2d at 306. In the past, inmates have often invited courts to set aside disciplinary hearing results based upon general assertions of staff bias. Yet, such requests, while frequently made, have rarely been embraced by the courts. Instead, the courts have held that a "generalized critique" of staff impartiality is insufficient to demonstrate the degree of bias necessary to prove a due process violation. Lasko v. Holt, 334 F. App'x 474 (3d Cir. 2009). Furthermore, in the absence of a showing that the hearing officer was "personally or substantially involved in the circumstances underlying [the investigation of the] charge," Greer v. Hogston, 288 F. App'x 797, 799 (3d Cir. 2008), courts generally decline to strike down disciplinary decisions on claims of staff bias. See Redding v. Holt, 252 F. App'x 488 (3d Cir. 2007).

In the federal prison system, the Bureau of Prisons has, by regulation, adopted specific guidelines for inmate discipline procedures which are set forth at 28 C.F.R. §541.10 et seq. These guidelines are specifically tailored and designed to meet the due process requirements outlined by the Supreme Court in <u>Wolff</u>. <u>See Von Kahl v. Brennan</u>, 855 F.Supp. 1413 (M.D. Pa. 1994). Under these regulations, when prison staff have reason to believe that a prohibited act has been committed by an inmate, an incident report must be prepared and referred for investigation. 28 C.F.R. §541.14. After investigation, the incident report is referred to a Unit Discipline Committee (UDC) for an initial hearing. 28 C.F.R. §541.15. The inmate, in turn, is entitled to notice of any proposed violation. The UDC may either reach a finding regarding whether a prohibited act was committed, or refer the case to the DHO for further hearing. 28 C.F.R. §541.15(f). The DHO then has the authority to dismiss any charge, to find a prohibited act was committed, and to impose any available sanction for the act. 28 C.F.R. §541.18. The DHO hearing is conducted pursuant to the procedures set forth at 28 C.F.R. §541.17.

Throughout this hearing process the inmate is provided with a series of procedural rights. For example, the inmate is entitled to notice of the alleged infraction. Specifically, the Warden must give the inmate advance written notice of the charges no less than 24 hours before the DHO hearing. 28 C.F.R. §541.17(a). The inmate is also entitled to assistance at DHO hearings. In particular, the Warden must

provide the inmate with a full time staff member to represent him at the DHO hearing. 28 C.F.R. §541.17(b).

The inmate also has a series of procedural rights at the hearing itself. Thus, at the DHO hearing, the inmate is entitled to make a statement and present documentary evidence. The inmate also has the right to submit names of requested witnesses and have them called to testify and to present documents. While the DHO need not call repetitive witnesses or adverse witnesses, 28 C.F.R. §541.17(c), the DHO shall call those witnesses who have information directly relevant to the charges and who are reasonably available. The inmate has the right to be present throughout the DHO hearing except during deliberation or when institutional security would be jeopardized. 28 C.F.R. §541.17(d).

In addition, the regulations prescribe procedural standards for DHO decision-making. Thus, the regulations require that the DHO must consider all evidence presented at the hearing. The decision of the DHO must be based on the facts presented, and if there is conflicting evidence, it must be based on the greater weight of the evidence. 28 C.F.R. §541.17(f). Finally, the DHO must prepare a record of the proceedings. This record must be sufficient to document the advisement of inmate rights, the DHO's findings, the DHO's decision and the specific evidence relied upon by the DHO. The record must include a brief statement of the reasons for the sanction

imposed. A copy of this record must be delivered to the inmate, ordinarily within 10 days of the hearing. 28 C.F.R. §541.17(g).

Given the panoply of procedural protections afforded to inmates by these regulations, courts have consistently held that when prison officials comply with these regulations they fully satisfy the requirements of procedural due process in this prison disciplinary setting. See e.g., Fiore v. Lindsay, 336 F.App'x 168 (3d Cir. 2009)(upholding disciplinary decision); Macia v. Williamson, 219 F.App'x 229 (3d Cir. 2007)(same); Reynolds v. Williamson, 197 F.App'x 196 (3d Cir. 2006)(same); Levi v. Holt, 193 F.App'x 172 (3d Cir. 2006)(same); Sinde v. Gerlinski, 252 F.Supp.2d 144 (M.D.Pa. 2003)(same).

### 2. Substantive Standards Governing DHO Decisions

In his habeas petition, Felder also attacks the substance of the DHO decision, arguing that there was insufficient evidence to support a finding of misconduct on his part. Like Felder's procedural due process challenge, this substantive attack on the sufficiency of the evidence in this disciplinary hearing must meet a demanding legal standard to succeed. A prison disciplinary determination comports with due process if it is based on "some evidence." See Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454-56 (1985) ("[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board"). This

standard is minimal and does not require examination of the entire record, an independent assessment of the credibility of witnesses, or even a weighing of the evidence. See id. at 455; Thompson v. Owens, 889 F.2d 500, 501-02 (3d Cir. 1989). Therefore, is well settled that the decision of the DHO is entitled to considerable deference by a reviewing court and must be upheld whenever there is "some evidence" to support the decision. Hill, 472 U.S. at 457; Elkin v. Fauver, 969 F.2d 48 (3d Cir.1992); Thompson v. Owens, 889 F.2d 500 (3d Cir. 1989); Franco v. Kelly, 854 F.2d 584, 588 (2d Cir. 1988); Freeman v. Rideout, 808 F.2d 949, 955 (2d Cir. 1986).

Thus, in this setting the "function [of the court] is to determine whether there is some evidence which supports the decision of the [DHO]." Freeman, 808 F.2d at 954. As the Supreme Court has observed, the "some evidence" standard is a highly deferential standard of review and:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Hill 472 U.S. at 455-456.

Applying this deferential standard, once the reviewing court determines there is "some evidence" to support the finding of the DHO, the court must reject the evidentiary challenge by the petitioner and uphold the finding of the DHO. Griffin v. Spratt, 969

F.2d 16, 22 (3d Cir. 1992); Thompson, 889 F.2d 501; Freeman, 826 F.2d at 954. In practice, courts have rarely condemned correctional disciplinary decisions as being wholly lacking in evidentiary support, and have frequently concluded that disciplinary findings are supported by the requisite degree of proof. See e.g., Fiore v. Lindsay, 336 F.App'x 168 (3d Cir. 2009)(upholding disciplinary decision); Macia v. Williamson, 219 F.App'x 229 (3d Cir. 2007)(same); Reynolds v. Williamson, 197 F.App'x 196 (3d Cir. 2006)(same); Levi v. Holt, 193 F.App'x 172 (3d Cir. 2006)(same); Sinde v. Gerlinski, 252 F.Supp.2d 144 (M.D.Pa. 2003)(same).

**B.** **Felder Was Afforded His Procedural Due Process Rights at the DHO Hearing, and the DHO Finding of Misconduct Was Supported By Adequate Evidence**

Judged against these standards, Felder's procedural and substantive challenges to this prison disciplinary proceeding simply fail. First, with respect to Felder's procedural due process claims, in this case it is evident that this prisoner's due process rights were fully vindicated. Felder received advance, written notice of the proposed disciplinary charges against him. In fact, he was notified on multiple occasions of his procedural due process rights, including his right to have staff assistance and to request witnesses. In this case, Felder waived those rights, proceeding without assistance and declining to present witnesses. Felder was also notified of his right to be present at the disciplinary hearing, and to provide his account of events to the

12

hearing officer, rights that he freely and consistently exercised. Furthermore, once the hearing was concluded prison officials scrupulously complied with prison regulations and afforded Felder his due process rights, by providing him with written decisions outlining the basis of their actions.

As for Felder's complaints that the DHO was biased against him, the Petitioner offers little to support this claim beyond a "generalized critique" of staff impartiality, which is as a legal matter insufficient to demonstrate the degree of bias necessary to prove a due process violation. <u>Lasko v. Holt</u>, 334 F. App'x 474 (3d Cir. 2009). Since Felder has failed to show that the hearing officer was "personally or substantially involved in the circumstances underlying [the investigation of the] charge," <u>Greer v. Hogston</u>, 288 F. App'x 797, 799 (3d Cir. 2008), this Court should decline his invitation to strike down this disciplinary decision based solely upon a claim of staff bias. <u>See</u> <u>Redding v. Holt</u>, 252 F. App'x 488 (3d Cir. 2007).

Similarly, Felder's complaint that the DHO improperly relied upon a confidential source information in reaching this decision is contradicted by the DHO report itself. That report contains no reference to, and professes no reliance upon, any confidential source information. Instead, the DHO decision relied solely upon the physical evidence–the discovery of a cell phone, hidden in a milk carton , concealed

in Felder's secured locker–to conclude that Felder was guilty of this institutional rules infraction.

Thus, the record of these disciplinary proceedings affirmatively reveals that Felder was given all of the procedural protections that due process requires in this setting since he was afforded: (1) advance written notice of the disciplinary charges; (2) an opportunity to call witnesses and present documentary evidence as part of a defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. Wolff v. McDonnell, 418 U.S. at 563-67. Given the full array of procedural rights provided to Felder during these proceedings, his procedural due process claim fails. See e.g., Fiore v. Lindsay, 336 F.App'x 168 (3d Cir. 2009)(upholding disciplinary decision); Macia v. Williamson, 219 F.App'x 229 (3d Cir. 2007)(same); Reynolds v. Williamson, 197 F.App'x 196 (3d Cir. 2006)(same); Levi v. Holt, 193 F.App'x 172 (3d Cir. 2006)(same); Sinde v. Gerlinski, 252 F.Supp.2d 144 (M.D.Pa. 2003)(same).

Nor can Felder successfully challenge the substantive outcome of the DHO hearing, since it is apparent that this decision is adequately supported by "some evidence" in the record. With respect to this issue, Felder's essential argument is that Room 247, where this shakedown inspection occurred, was a space that was apparently shared by a number of inmates. Given the number of inmates who had

access to this room, Felder argues that prison officials erred in concluding that he was the prisoner who possessed this cell phone.

While this argument might have some resonance in a factual setting where contraband is found in a common area that is equally accessible to a large number of inmates, the difficulty with this argument in this particular case, which Felder readily concedes, is two-fold: First, it is clear that as a legal matter in a prison setting a finding of possession of contraband can rest on evidence showing the inmate's constructive possession of the contraband. Indeed, it has long been observed that: "The proposition that constructive possession provides 'some evidence' of guilt when contraband is found where only a few inmates have access is unproblematical." Hamilton v. O'Leary, 976 F.2d 341, 345 (7th Cir.1992)(citations omitted). In fact, we have long recognized that " [u]nder the doctrine of constructive possession, [an inmate is] responsible for contraband found in [among his property] See generally White v. Kane, 860 F.Supp. 1075, 1079, n. 5 (E.D.Pa.1994)." Vega v. Williamson, No. 05-1716, 2005 WL 3117677, *3 (M.D.Pa. Nov. 22, 2005).

Furthermore, this is a case where the constructive possession doctrine was properly applied, and permitted an fair inference that Felder possessed this particular contraband. The record of the DHO proceedings reveals that the contraband cell phone was found concealed inside a milk carton that was found within Felder's locker in the

prison. Moreover, the seizing officer reported that Felder's locker was secured at the time of the search, which disclosed this contraband hidden inside the locker. Thus, this is not a case where the contraband was found in a common area that was equally accessible to a large number of inmates. Quite the contrary, this contraband was found inside Felder's prison locker, a locker which was reportedly found secured prior to the search. In such instances, where contraband is found in a secured location over which the accused exercises control, courts have consistently found that the constructive possession doctrine permits a finding that the person who controlled the location also possessed the contraband found concealed at that location. See, e.g., United States v. Introcaso, 506 F.3d 360 (3d Cir. 2007)(contraband in home occupied by defendant);United States v. Lopez, 271 F.3d 472 (3d Cir. 2001)(contraband in car, defendant possessed keys); United States v. Martorano, 709 F.2d 863 (3d Cir. 1983)(contraband inside van, defendant possessed keys). In short, in this case, where the contraband was found inside a secured locker that belonged to Felder, prison officials were reasonably entitled to infer Felder's constructive possession of the contraband, concealed in a place over which he exercised control.

Finally, Felder complains that this disciplinary proceeding was fatally flawed because prison officials did not honor his request to inspect the cell phone to determine who might have placed calls on the phone. While Felder faults prison staff

for not taking this step, his pleadings acknowledge that staff indicated to him that the identities of those who may have placed calls on the phone was not determinative here. Rather, what led to this disciplinary citation was Felder's possession of the phone, regardless of whether it was possessed for use by Felder or use by others. While prison officials "may not arbitrarily refuse to consider exculpatory evidence simply because other evidence in the record suggests guilt[,]" Whitford v. Boglino, 63 F.3d 527, 536 (7th Cir.1995) (quoting Viens v. Daniels, 871 F.2d 1328, 1336 n. 2 (7th Cir.1989)), in this case we agree that phone usage records would not necessarily have been probative of Felder's cell phone possession, since inmates may hold contraband for one another, and one prison's possession of an item of contraband may be designed to facilitate some other inmate's use of that contraband. Therefore, the decision by prison officials to decline to conduct the investigation requested by Felder does not, by itself, undermine the fact that "some evidence" still supports the disciplinary action taken here.

Indeed, the United States Court of Appeals for the Third Circuit has recently concluded that an inspection of the contents of a seized contraband cell phone is not constitutionally required in this setting, where an inmate is cited for possession of the cell phone, stating that in such cases:

> [B]ecause [the inmate] was charged only with possession of a [cell phone] SIM card as hazardous contraband, the content of the SIM card was not material evidence, . . . . The Seventh Circuit Court of Appeals has held that the rule of Brady v. Maryland requiring the disclosure of material exculpatory evidence applies to prison disciplinary proceedings. See Chavis v. Rowe, 643 F.2d 1281, 1285-86 (7th Cir.1981). See also Piggie v. Cotton, 344 F.3d 674, 678 (7th Cir.2003) (citing Young v. Kann, 926 F.2d 1396, 1403 (3d Cir.1991) (claim that hearing officer violated inmate's right to due process by refusing to produce letter in which inmate allegedly threatened cell-mate should not have been dismissed as frivolous)). But see Griffin v. Spratt, 969 F.2d 16, 22 (3d Cir.1992) (limiting due process violation to circumstance where "existing evidence is improperly withheld and hearsay is offered in its place"). But identifying the true owner of the [cell phone] SIM card . . . by verifying the cellular phone number assigned to it and/or revealing the list of calls made and received would not have exonerated [charged inmate] of *possession* of contraband. The contents of the [cell phone] SIM card was not material evidence, and the fact remains that it was found taped to the back of his bottom clothes drawer, and [the inmate] does not dispute that [cell phone] SIM cards are properly prohibited in the prison setting; nor does he dispute the reasonableness of the requirement that inmates keep their assigned area free of contraband.

Donahue v. Grondolsky, No. 10-1147, 2010 WL 3529301, *4 (3d Cir. Sept. 13, 2010).

Accordingly, on these facts, we conclude that there clearly was some evidence to support the disciplinary finding. Since there is an adequate factual basis for that disciplinary finding, Felder's substantive challenge to this disciplinary action should also be rejected. See e.g., Fiore v. Lindsay, 336 F.App'x 168 (3d Cir. 2009)(upholding disciplinary decision); Macia v. Williamson, 219 F.App'x 229 (3d Cir. 2007)(same);

Reynolds v. Williamson, 197 F.App'x 196 (3d Cir. 2006)(same); Levi v. Holt, 193 F.App'x 172 (3d Cir. 2006)(same); Sinde v. Gerlinski, 252 F.Supp.2d 144 (M.D.Pa. 2003)(same).

IV. **Recommendation**

Accordingly, for the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus, IT IS RECOMMENDED that the Petition be DENIED, and that a certificate of appealability should not issue. The Petitioner is further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 11th day of January, 2011.

                                                ***S/Martin C. Carlson***
                                                Martin C. Carlson
                                                United States Magistrate Judge